UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| TAMMY L. LAWRENCE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. 08-4051 |

**ORDER**

This matter is now before the Court on Plaintiff Tammy L. Lawrence's ("Lawrence") Motion for Summary Judgment and the Defendant Commissioner of Social Security Administration's ("Defendant" or "Commissioner") Motion for Summary Affirmance. For the reasons set forth below, Lawrence's Motion for Summary Judgment [#10] is GRANTED, and the Commissioner's Motion for Summary Affirmance [#12] is DENIED.

**Background**

Lawrence filed her claim for Disability Insurance Benefits ("DIB") on December 20, 2002, alleging an onset of her disability on May 1, 2001. (R. 37). Lawrence claims to suffer from severe fibromyalgia, depression, cognitive dysfunction, and a history of

endometriosis.[1]  She was born on December 17, 1963, and was 38 years old at the time of her alleged onset date. (R. 37).

Nine years later, Lawrence is still in pursuit of benefits.

Lawrence's claim was denied at the initial level on February 24, 2003, and reconsideration level on August 27, 2003, and she subsequently requested a hearing before an Administrative Law Judge ("ALJ"). (R. 22-26, 29-32).  On May 7, 2004, ALJ Benjamin Parks held a hearing where Lawrence appeared with counsel, and both she and Brian Paprocki, a vocational expert ("VE"), testified.  On June 1, 2004, ALJ Parks issued his decision finding that Lawrence was not disabled, and the Appeals Council denied her request for review.[2]

Lawrence then filed an action with the U.S. District Court, Central District of Illinois, and her matter came before the Honorable Joe Billy McDade, in case number 04 CV 4074.  Judge McDade did an admirable job setting forth Lawrence's symptoms, treatment, and diagnoses in his Order, dated September 18, 2006. (R. 404-22).

In his Order, Judge McDade noted that Dr. Michael Miniter, a treating physician and a rheumatologist, reached a different conclusion regarding the severity of Lawrence's fibromyalgia. (R. 407).  Dr. Miniter found that Lawrence "clearly has fibromyalgia" and has problems with concentration, memory, joint pain, general aching, stiffness, and sleep difficulty. (R. 407).  Dr. Miniter also opined that Lawrence has

---

[1] Fibromyalgia, also known as fibrositis, is "inflammatory hyperplasia of the white fibrous tissue of the body, especially of the muscle sheaths." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 630 (27th ed. 1988).  Its causes are unknown, there is no cure, and its symptoms are entirely subjective.  Its principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and multiple tender spots in 18 fixed locations on the body. *The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee,* 33 Arthritis and Rheumatism 160 (1990).  Endometriosis is a condition in which tissue resembling the uterine mucous membrane occurs aberrantly in various locations in the pelvic cavity. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 554 (27th ed. 1988).
[2] The Defendant states that the Records pertaining to this decision and Lawrence's request for review are not in the record.

functional limitations and is limited to standing thirty minutes at a time, sitting less than two hours in an eight hour work day, and must walk around for approximately ten minutes every fifteen minutes. (R. 407-8). Dr. Miniter concluded that Lawrence would need to alternate standing and sitting, elevate her feet while working, and take ten minute unscheduled breaks every hour. (R. 408). She could occasionally lift ten pounds, twist and stoop, but could rarely crouch, climb ladders, or climb stairs. (R. 408). Dr. Miniter opined that Lawrence would likely be absent from work at least four days a month due to her impairments. (R. 408).

In his Order, Judge McDade reviewed Lawrence's medical examinations and treatment, and discussed both her and VE Paprocki's testimony before the ALJ. Judge McDade noted that when the ALJ presented VE Paprocki with a hypothetical based upon Dr. Miniter's opinions, VE Paprocki testified that Dr. Miniter's restrictions would preclude a hypothetical person from any employment. (R. 410).

Judge McDade reversed the ALJ's decision and remanded the case to the Appeals Council, pursuant to the fourth sentence of 42 U.S.C. § 405(g). (R. 422). Judge McDade found that the ALJ had failed to explain why he discounted the opinion of Dr. Miniter and concluded that the ALJ did not adequately discuss Lawrence's credibility. (R. 419, 421). Judge McDade remanded the case to the ALJ so that he could (1) articulate his reasons for rejecting Dr. Miniter's opinions and assessments of Lawrence's functional limitations and (2) articulate his reasons for rejecting the credibility of Lawrence's testimony. (R. 418, 421). Specifically, Judge McDade found:

> In the record, it is clear that Dr. Miniter has diagnosed Lawrence with Fibromyalgia and opined that Lawrence's impairments are reasonably consistent with her symptoms and functional limitations. (R. at 275, 349). At Lawrence's hearing, the [VE] was presented with a hypothetical that reflected Dr. Miniter's opinion in his RFC questionnaire. The [VE] testified

> that the restrictions would not be accommodated by *any* employer. (R. at 374, emphasis added.)   Thus, Dr. Miniter's medical opinion is in strong support of Lawrence's case and contrary to the ruling of the ALJ. (R. 417).

Judge McDade found that the ALJ presented the evidence in a way that only supported his decision:

> [T]he only reasoning given by the ALJ for discrediting Lawrence's testimony is that she testified that she cares for her daughter, works as part-time cook one day a week, shoveled snow and manure and handles the family finances. . . . The evidence was actually that she cares for her daughter, experiences severe pain after working one day a week as a cook at a convenience store (R. at 345), and experienced severe pain after she tried to shovel snow and manure once (R. at 251) and no longer handles the family finances (Doc. 12 at 16; R. at 368).   These activities are limited or sporadic at best, which the Seventh Circuit has already held does not mean a claimant is capable of full time employment. (R. 420-21).

On remand, the matter was assigned to ALJ Alice Jordan, who held a hearing on February 22, 2007, where Lawrence and VE Paprocki both testified. (R. 666-710).  ALJ Jordan denied Lawrence's claim on March 28, 2007. (R. 428).  ALJ Jordan found that Lawrence had fibromyalgia, depression/ cognitive deficits, endometriosis, chronic low back pain, and shoulder problems, but that while these impairments were "severe", they did not meet or medically equal one of the listed impairments. (R. 429).  ALJ Jordan concluded that Lawrence's allegations regarding her limitations were not credible because she appeared in the courtroom "as a very confident, in-control individual that has no apparent problems answering questions, giving detailed medical and work histories, and appearing comfortable." (R. 435).  ALJ Jordan noted that "although Dr. Miniter's diagnosis of fibromyalgia has been confirmed by acceptable signs and symptoms, his assessment that [Lawrence] is limited from performing virtually any work activity cannot be fully accepted" because "[he] failed to provide explanations for these limitations."  ALJ Jordan further commented:

4

> [Dr. Miniter] reported good range of motion of [Lawrence's] joints, and he found no swelling or tenderness. [Dr. Miniter] has recommended exercises and increased walking only and stated that she is sleeping better and that her energy had improved.
>
> Dr. Miniter assessed [Lawrence] as being unable to work without elevating her legs 6 to 12 inches for the entire workday (Exhibit 3F), but his office notes do not indicate that [Lawrence] had edema, swelling, or significant pain in her lower extremities (Exhibits 1F, 3F, and 7F). The assessment of [Lawrence's] ability to perform work activities by Dr. Miniter is not supported by objective medical evidence nor his office notes. The opinion that [Lawrence] is unable to perform virtually all work activities provided by Dr. Miniter cannot be afforded significant probative value. (R. 435-36).

ALJ Jordan further stated:

> Although [Lawrence] has symptoms of depression and cognitive problems associated with mental problems, she does not display the degree of functional limitations associated with a disabling mental disease process. She is only mildly limited in her ability to perform daily activities. She admitted at the hearing that she is able to perform household tasks, attend to her own personal needs, read, perform some photography work, and watch public television. (R. 434).

Lawrence again appealed to the Appeals Council, who found that ALJ Jordan's decision did not adequately address the cognitive deficits apparent in the record, and remanded the case on August 30, 2007. (R. 455). Specifically, the Appeals Council held that despite the ALJ finding that Lawrence had moderate difficulty in maintaining social functioning, moderate difficulty in maintaining concentration, persistence, or pace, the ALJ failed to include any mental limitations in Lawrence's assessed residual functional capacity. (R. 457). The case was remanded back to ALJ Jordan, who held another hearing on November 29, 2007, where Lawrence and VE Paprocki again testified. (R. 636-665).

At this hearing, Lawrence testified that she tries to do small chores around the house and go for short walks of up to one-quarter mile for exercise. (R. 641-42). She stated that she gets up in the morning around 10:00, "turns the dogs loose" and feeds

5

them. (R. 641). Later in the day, she might walk next door to her parents' home to visit, later go back to her house and she might unload the dishwasher. (R. 642). Thereafter, she feeds the rabbits and cats, and wanders some more. (R. 642). Then she will sit down and try to read, then she will go outside for a cigarette, then come back in, sit down for a little bit, then get up and wander some more. (R. 642). Lawrence testified that, once a week, she might drive about thirteen miles to get groceries when the store is not busy, and when she comes back, she is exhausted. (R. 642, 656). Some days, she might go to the library. (R. 642). She used to read non-fiction but now reads fiction because of her failing memory. (R. 642). Lawrence discussed the photography she used to perform prior to her disability, and explained that she is no longer able to do this, nor does she do the gardening that she previously enjoyed. (R. 644). Lawrence stated that her current condition was substantially the same as it was in 2004. (R. 645). She stated that she can sit for approximately 20-30 minutes before she experiences pain and need to get up and move around. (R. 646). With regard to her cognitive difficulties, Lawrence testified that she finds herself "wandering around," where she is in a fog and not sure what she was doing. (R. 650). She also stated she had difficulty with memory, such as remembering discussions with family members or tasks she was supposed to do. (R. 650). She stated she no longer does the home finances or pays the family bills because she would forget to pay them on time. (R. 652).

At the same hearing, VE Paprocki testified that, with strictly sedentary limitations and no mental or cognitive limitations, a person with Lawrence's background could perform her past work as a bookkeeper as well as other sedentary unskilled jobs. (R. 660-61). However, when additional limitations requiring simple, routine work for 6 hours in a day, and a marked limitation in attention and concentration for two hours a day are

6

added, VE Paprocki indicated that there was no competitive employment available because the previously indicated jobs would involve some attention to detail and some recordkeeping. (R. 662-63). VE Paprocki further testified that a normal employer would not be able to accommodate a hypothetical person who missed three or more days of work per month. (R. 663).

ALJ Jordan denied Lawrence's claim on January 19, 2008. (R. 388). In reaching her conclusion that Lawrence was not disabled, the ALJ found (1) that Lawrence met the insured status requirements of the Social Security Act through March 31, 2004; (2) that Lawrence had not engaged in substantial gainful activity from May 1, 2001, the alleged onset date, through March 31, 2004, the date last insured; (3) that Lawrence suffered from severe impairments from fibromyalgia and endometriosis; (4) that these impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404.1520; and (5) that Lawrence had the residual functional capacity to perform sedentary work from May 1, 2001 through March 31, 2004. (R. 392-96).

ALJ Jordan stated in her decision:

[Lawrence's] ability to maintain concentration, persistence, and pace, is also only mildly limited. She is able to concentrate well enough to perform hobbies, complete research on her computer, read extensively, pay bills, and use a library. She prepares tax returns for her family, and in the past, prepared business reports. The ability to perform these mental activities demonstrates that [Lawrence] is mildly, at most, limited in her ability to maintain concentration, persistence, or pace. (R. 396).

The assessment by Dr. Miniter appears to be that of a sympathetic treating physician, who is willing to give every benefit of the doubt to his patient, and his report is directly contradicted by the assessment performed by objective state agency reviewing physicians who assessed Lawrence as been capable of performing a wide range of light duty work. (Exhibit 1F, pages 42-49). Also, [Lawrence's] long-term attending physician, Dr. Paul McLoone has not reported that [Lawrence] is limited from performing the activities of light duty work due to fibromyalgia or other physical impairment (Exhibits 1F and 2F). Finally, the assessment

7

made by Dr. Miniter is not supported by objective medical evidence and is directly contradicted by [Lawrence's] testimony at the hearing about her daily activities and by the statements she has made to her physicians about her ability to perform daily activities.  These daily activities include using a computer for up to two hours at one time to research her illnesses, performing financial duties for her family, shoveling snow and manure, performing household tasks, as well as performing other activities which demonstrate that she is able to perform at least sedentary work.  The opinion by Dr. Miniter that [Lawrence] is unable to sustain even sedentary on a full-time basis therefore cannot be fully accepted. (R. 394).

Lawrence appealed the decision to the Appeals Council, who denied review on August 13, 2008. (R. 379).  This denial rendered the ALJ's January 19, 2008, decision as the final determination of the Commissioner.  A timely complaint for judicial review was filed in the instant case on September 16, 2008.

The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g) 1383(c)(3).

## Discussion

In order to be entitled to DIB, a plaintiff must show that her inability to work is medical in nature.  Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits.  *See* 20 C.F.R. §§ 404.1566, 416.966.

The establishment of disability under the Act is a two-step process.  First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382(c)(a)(3)(A).  Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980).  That factual determination is

8

made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920. The five-step test is examined by the ALJ, in order, as follows: (1) is the plaintiff presently unemployed?; (2) is the plaintiff's impairment "severe?" (20 C.F.R. §§ 404.1521, 416.921); (3) does the impairment meet or exceed one of the list of specified impairments? (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the plaintiff unable to perform his or her former occupation?; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984). The plaintiff has the burdens of production and persuasion on steps one through four. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show that the plaintiff has the ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

This Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

389, 401, 91 S.Ct. 1420 (1971).  Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous.  *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985).

Lawrence requests that this Court vacate the decision of the Commissioner and remand the case for an award of benefits.  In her motion, Lawrence raises three arguments: (1) the ALJ failed to give proper weight to Dr. Miniter's opinions; (2) the ALJ erred when she failed to find Lawrence's cognitive and mental impairments to be severe; and (3) the ALJ erred in finding Lawrence's testimony less than credible.  The Court will address each argument in turn.

**1.    Whether the ALJ failed to give proper weight to Dr. Miniter's opinions**

Dr. Miniter opined that Lawrence suffers from fibromyalgia, has problems with concentration and memory, and is limited to standing thirty minutes at a time, sitting less than two hours in an eight hour work day, and must walk around for approximately ten minutes every fifteen minutes.  Despite finding that "Dr. Miniter's diagnosis of fibromyalgia has been confirmed by acceptable signs and symptoms," the ALJ discounted Dr. Miniter's assessment regarding Lawrence's limitations.  The ALJ concluded Dr. Miniter failed to sufficiently document his opinions and speculated that he "appear[ed] to be that of a sympathetic treating physician." (R. 394, 535).

Lawrence argues that rather than appropriately weighing Dr. Miniter's medical opinions, the ALJ relied upon statements made by Dr. Paul McLoone, a prior treating generalist, and Disability Determination Service non-examining physicians.  Lawrence contends that while Dr. McLoone initially did not diagnose Lawrence with fibromyalgia, he later changed his diagnosis to include fibromyalgia.  Lawrence further points out that Dr. McLoone referred her to Dr. Miniter, a rheumatologist whose specialties include the

10

treatment of fibromyalgia. The Commissioner counters that while there is no dispute that Lawrence's fibromyalgia was a severe impairment, the ALJ was correct in discounting Dr. Miniter's assessments because they conflicted with his treatment notes, Lawrence's reported activities, and other medical source opinions.

A treating physician's opinion about the nature and severity of the claimant's impairment is normally given controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is consistent with substantial evidence in the record. *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009) *citing* 20 C.F.R. § 404.1527(d)(2), *Bauer v. Astrue,* 532 F.3d 606, 608 (7th Cir. 2008). An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record. *Moss*, 555 F.3d at 560 citing *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003).

In most cases involving fibromyalgia, there will be no objective evidence indicating its presence or severity. The Court of Appeals for the Seventh Circuit has explained that:

> [Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and- the only symptom that discriminates between it and other diseases of a rheumatic character- multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. *Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir. 1996).

Based on the difficulty in diagnosing fibromyalgia, the Court is not convinced that the ALJ conducted a critical review of the evidence or built a logical and accurate bridge from the evidence to her conclusion that Dr. Miniter's opinion should be discounted.

Contrary to *Sarchet*, the ALJ referred to the lack of objective medical evidence in her decision. *Sarchent,* 78 F.3d at 307 (stating that it is difficult to determine the severity of fibromyalgia because of the unavailability of objective clinical tests). The Court finds that ALJ improperly discounted Dr. Miniter's opinions regarding the severity of Lawrence's condition and impermissibly drew her own conclusions about the severity of Lawrence's condition from the medical evidence. *Blakes ex rel. Wolfe v. Barnhart,* 331 F.3d 565, 570 (7th Cir. 2003) (holding that ALJ improperly "play[s] doctor" when he draws medical conclusion without expert evidence); *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir. 2000) ("an ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record") (internal citation omitted).

Additionally, the ALJ failed to determine the weight to be accorded Dr. Miniter's opinion in accordance with Social Security Administration regulations. *Moss*, 555 F.3d at 561 citing 20 C.F.R. § 404.1527(d)(2). If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion. *Id.*; *Bauer,* 532 F.3d at 608; *Books v. Chater,* 91 F.3d 972, 979 (7th Cir. 1996). The ALJ apparently thought that Dr. Miniter's assessment of Lawrence's medical condition conflicted with what both Dr. McLoone opined Lawrence was able to do, and with what Lawrence testified she was able to do. Regardless, the ALJ chose to accept one physician's opinions but not the other's without any consideration of the factors outlined in the regulations, such as the differing specialties of the two doctors,

and discounted Lawrence's testimony as not credible. Moreover, the Court does not find that there is conflict between the two medical opinions.

Accordingly, the Court finds that the ALJ's rejection of Dr. Miniter's opinions was not supported by substantial evidence in the record. Therefore, in discounting Dr. Miniter's opinions, the ALJ failed to apply the correct legal standard and further failed to support that decision with substantial evidence.

**2.     Whether the ALJ erred when she failed to find Lawrence's cognitive and mental impairments to be severe**

An ALJ is required to include all impairments which are supported by adequate medical evidence of record. *Herron v. Smith,* 19 F.3d 329, 337 (7th Cir. 1994). Lawrence argues that even thought the ALJ had found that she suffered from cognitive difficulties and depression in her first decision, she failed to include these limitations in her residual functional capacity and in the questions she posed to the VE. Lawrence notes that the Appeals Council remanded the case based on this failure, finding that further evaluation of Lawrence's mental condition was necessary. (R. 457). Rather than fix the problem and include these limitations, Lawrence contends that the ALJ decided, despite the fact that there was no change in the evidence of record on this issue, that these impairments were no longer severe.

The Commissioner counters that substantial evidence supported the ALJ's finding that Lawrence did not have limitations due to her cognitive deficits and depression. The Commissioner maintains that the ALJ's findings regarding Lawrence's mental limitations in the second decision were less restrictive than the first decision because, as the ALJ stated, Lawrence's reported activities did not support a finding that she had significant mental limitations, especially with respect to concentration and

13

memory. (R. 396). Further, the Commissioner argues that Lawrence failed to cite to any authority that required the ALJ to incorporate her prior decision findings into her decision.

The Court notes that the Appeals Council remanded the case back to the ALJ based on the ALJ's failure to fully evaluate Lawrence's mental condition. The Court finds that the ALJ should have articulated her reasons for reaching a different conclusion regarding Lawrence's mental limitations in her second decision. Accordingly, the ALJ erred in failing to address why she changed her opinion regarding the severity of Lawrence's cognitive deficits.

**3.    Whether the ALJ erred in finding Lawrence's testimony less than credible**

Lawrence also contends that the ALJ erred when she found Lawrence's testimony regarding the extent of her symptoms to be less than credible. The Commissioner argues that the ALJ properly considered medical source opinions, Lawrence's treatment history, and Lawrence's reported activities, and reasonably concluded that Lawrence's statements regarding her symptoms were not entirely credible.

An ALJ's credibility determination will be upheld "if the ALJ gave specific reasons for the finding that are supported by substantial evidence." *Moss*, 555 F.3d at 561, citing *Arnold v. Barnhart,* 473 F.3d 816, 823 (7th Cir. 2007). "But as the regulations state, an ALJ cannot disregard subjective complaints of disabling pain just because a determinable basis for pain of that intensity does not stand out in the medical record." *Id.* citing S.S.R. 96-7p, *Johnson v. Barnhart,* 449 F.3d 804, 806 (7th Cir. 2006). If the medical record does not corroborate the level of pain reported by the claimant, the ALJ

must develop the record and seek information about the severity of the pain and its effects on the applicant. *Id.* citing *Clifford v. Apfel,* 227 F.3d 863, 871-72 (7th Cir. 2000).

The Court finds that the ALJ discounted Lawrence's complaints and marginalized her limitations by presenting Lawrence's testimony only in a way that supported her decision:

> [Lawrence] testified during a typical day she takes a walk, walks her dogs, and attends to rabbits and cats. She reads, does laundry, and visits the local library. She is able to the [sic] grocery shop, cook, wash clothes, do art work, take photographs, and attend to other household tasks. (R. 393).

There are two troubling features about the ALJ's assessment of Lawrence's credibility. First, the ALJ's recitation of the administrative record is misleading on significant points. The ALJ states that Lawrence goes to the grocery store but fails to mention that when Lawrence comes back from the store, she is exhausted. (R. 642, 656). The ALJ mentions that Lawrence reads, but fails to include that Lawrence testified that she now primarily reads fiction because of her failing memory (R. 642). The ALJ was inaccurate when she stated that Lawrence takes photographs because Lawrence testified that she no longer take photos. (R. 644).

The second aspect that is troubling about the ALJ's credibility assessment is the undue weight placed on Lawrence's household activities in assessing her ability to work outside the home. An ALJ cannot disregard a claimant's limitations in performing household activities. *Moss*, 555 F.3d at 562 citing *Craft v. Astrue,* 539 F.3d 556, 680 (7th Cir. 2009); *Mendez v. Barnhart,* 439 F.3d 360, 362 (7th Cir. 2006). The Court finds that the ALJ ignored Lawrence's numerous qualifications regarding her daily activities; Lawrence testified that she can only sit for approximately 20-30 minutes before she experiences pain and need to get up and move around (R. 646); that she finds herself

15

"wandering around," where she is in a fog and not sure what she was doing (R. 650); that she has difficulty with memory, such as remembering discussions with family members or tasks she was supposed to do (R. 650); and that she no longer does the home finances or pays the family bills because she would forget to pay them on time. (R. 652).

The ALJ placed undue reliance on the Lawrence's limited daily activities and ignores much of her testimony concerning the difficulties she encounters in performing these activities. Consequently, the ALJ failed to adequately consider Lawrence's functional limitations in finding that she would be able to seek competitive employment. As discussed above, subjective complaints in this case are more important than in other cases because they are clinical indicators of the disease of fibromyalgia. After considering the record as a whole, this Court cannot uphold the ALJ's credibility finding. Even *if* there was enough evidence in the record to support a conclusion that Lawrence was not disabled during the relevant period, the ALJ failed to build an accurate and logical bridge between the evidence and the result, and committed significant logical and legal errors reaching her conclusion. *Sarchet,* 78 F.3d at 307 ("we cannot uphold a decision be an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact does not.").

**CONCLUSION**

For the reasons set forth above, Lawrence's Motion for Summary Judgment [#10] is GRANTED, and the Commissioner's Motion to Affirm [#12] is DENIED. The Court finds that substantial evidence supports the finding that Lawrence is disabled. Accordingly, the Court REVERSES the decision of the Commissioner, pursuant to the fourth sentence of 42 U.S.C. § 405(g). The Court remands the case so that the Commissioner can award Lawrence disability insurance benefits.

ENTERED this 17th day of August, 2009.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge